# EXHIBIT B

| | |
|---|---|
| **From:** | Paul J. Kozacky <pkozacky@kwmlawyers.com> |
| **Sent:** | Monday, August 2, 2021 1:09 PM |
| **To:** | Matthew J. Piers; John K. Hughes; Michael A. Hierl |
| **Subject:** | Millennium and PML |
| **Attachments:** | 2021-08-02 Millennium and PML Second Demand Letter to Hierl.pdf |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Gentlemen—

Attached is a letter sent on behalf of Millennium and PML.

**Paul J. Kozacky**
Attorney at Law – Proctor in Admiralty



Kozacky Weitzel McGrath, P.C.
77 West Wacker Drive, Suite 4500
Chicago, IL 60601
312.696.0900 (General Office)
312.907.0651 (Cell)
312.696.0901 (Direct Dial)
pkozacky@kwmlawyers.com
www.kwmlawyers.com



1



77 West Wacker Drive – Suite 4500
Chicago, IL 60601
(O) 312.696.0900

Paul J. Kozacky
Attorney at Law
Proctor in Admiralty
(D) 312.696.0901
pkozacky@kwmlawyers.com
www.kwmlawyers.com
Admitted in Illinois and Michigan

August 2, 2021

*via e-mail*

Matthew J. Piers, Esq.
John K. Hughes, Esq.
Michael A. Hierl, Esq.
Hughes Socol Piers Resnick Dym, Ltd.
70 West Madison Street, Suite 4000
Chicago, Illinois 60602

      Re:  PML Process Management, Ltd., agent
            and Millennium Media, Inc., principal

Gentlemen—

    We are in receipt of your July 19, 2021 letter concerning our shared client Millennium's unambiguous and explicit December 7, 2020 instruction to your firm to remit "all" settlement proceeds on copyright enforcement matters thenceforth to PML. Your letter does not even acknowledge the client's unambiguous and explicit instruction, which begins with Ben Perino's December 7, 2020 (12:15 PM) email to Millennium's General Counsel DelMarie C. Broco, carboned to Michael A. Hierl:

> Hi DelMarie,
>
> this is notice to HSPRD that PML has assumed the former obligations and liabilities in respect of the copyright enforcement matters and that all payments for past infringements and going forward shall be remitted to PML on behalf of Millennium.
>
> Can you please confirm that Mike Hierl can act on behalf of Millennium in accordance with the agreement between PML and Millennium.
>
> Thank you
>
> Ben

Kozacky Weitzel McGrath, P.C.

The same day, DelMarie C. Broco (at 2:40 PM) emailed Ben Perino, carboning Michael A. Hierl, stating, in its entirety, "Confirmed."

Initially, your firm indicated it would abide the instruction. On December 16, 2020 (11:05 AM), Michael A. Hierl emailed Ben Perino and promised "Our accountant is preparing the wire confirmation which will be forwarded this week, as Thomas [Nowak, PML's accountant] requested earlier." That did not happen.

After some status inquiries, on December 19, 2020 (7:41 PM) Michael A. Hierl emailed Ben Perino and represented "My accounting people are working on it. There are a few unresolved Comcast invoices." Ben Perino responded, "Please deduct any unresolved ISP invoices from future accountings and wire the money that's owed to the client by today," a very sensible initial step as he repeatedly had been advising your firm that PML's tender of Millennium's settlement share of the requested wire transfer was overdue. No wire, or partial wire (for example, withholding any open internet service provider invoices), ensued.

The representations that the wire transfer was to go forward but was being held up by your firm's accounting department does not appear to be accurate, as you firm's story then changed.

Next, your firm indicated that you were holding the funds in your client trust account until Millennium's prior agent, CMS, would sign off. This was a breach of your firm's fiduciary duty to abide Millennium's unambiguous and explicit instruction to wire all monies to PML. Neither PML nor Millennium authorized that communication to, or any empowerment of, the former agent CMS to revoke Millennium's payment instruction. Specifically, on January 24, 2021 Michael A. Hierl emailed the client and Ben Perino that "These funds remain in our firm trust account. . . . My firm feels caught in a three-way split among CMS, PML and Millennium." The email continued "Upon receipt of authorization from CMS, we will initiate the wire transfer. Everyone needs to be on the same page, the process must be transparent and we need to receive the proper authorizations from all parties before transferring funds."

That turned out to be a story too. Despite the representation that the funds were being held in your firm's client trust account until "all parties" signed off, not only did your firm ignore the client's direct instruction to wire the full amount of $88,866.17 directly to PML's account, but you also backed off on your requirement that "all parties" consent to the distribution in the last week of February 2021 by wiring $19,100.39 of the settlement proceeds directly to Millennium, and $69,765.78 to CMS without PML and most important the client, Millennium, agreeing. After months of back-and-forth with excuses about your accounting department holding things up, you simply wired monies contrary to the client's explicit instructions. As a result, and as you know, your firm (1) intentionally interfered with PML's payment of outstanding third party fees your firm is fully aware of for and on behalf of Millennium, and (2) intentionally deprived PML of its agency fee.

Your letter did not address our request for copies of any conflict of interest waivers among your client and its past and present agents, so we presume you have none.

  PML demands that your firm wire $69,765.78 to my firm's client trust account, the details of which were previously sent to you with my initial letter, within seven days to avoid my clients filing a civil lawsuit.

  We also request that you send me (1) all communications your firm has had with any defendant, potential infringement defendant or counsel, (2) all proposed or executed settlement agreements and (3) all payment records on the following twelve Northern District of Illinois lawsuits:

| | | | |
|---|---|---|---|
| 18-cv-2370 | 18-cv-4271 | 18-cv-5068 | 18-cv-5073 |
| 19-cv-3796 | 19-cv-5777 | 19-cv-7163 | 19-cv-7514 |
| 20-cv-0369 | 20-cv-1394 | 20-cv-1395 | 20-cv-1401 |

We reserve the right to conduct a complete audit of the matters handled by your firm, but for now believe the foregoing suffices.

  Finally, with respect to our request for an accounting, you have not corrected your fees calculation based on "net" collections as opposed to "gross" collections, as agreed in Michael A. Hierl's April 23, 2019 email. We calculate that your firm has charged an excessive fee in approximately the amount of $61,405.73. We request that you comment on the correctness of our calculation, and also return any unauthorized fees in the next week.

  Thank you for your attention to our requests.

            Very truly yours,

            /s/ *Paul J. Kozacky*

            Paul J. Kozacky